UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIE JEFFERSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-442 (GK) |
| ALBERTO GONZALEZ[1], Attorney General of the United States, et al., | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Plaintiff, a federal inmate proceeding *pro se,* brought this action alleging that the policy of the Bureau of Prisons ("BOP") regarding religious headwear and garments violates his First Amendment rights, the equal protection clause of the Fifth Amendment, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb.  Defendants have moved to dismiss or, in the alternative, for summary judgment and Plaintiff has filed an opposition and a cross-motion for summary judgment.

Background

Plaintiff is incarcerated at the United States Penitentiary Big Sandy in Inez, Kentucky. Amended Complaint ("Amend. Compl."), ¶ 3.  He professes to be an Orthodox Muslim.  *Id.*, ¶ 8.

---

[1] In his complaint, plaintiff names John Ashcroft in his capacity as the Attorney General. Alberto Gonzalez is Mr. Ashcroft's successor in that position, and thus substituted as a defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

On or about March 14, 2004, Plaintiff alleges that he submitted a request to the prison's supervisory chaplain that he be allowed to wear a turban and to wear pants above the ankles. *Id.*, ¶ 7. The chaplain denied the request on the ground that the BOP prohibited Muslim inmates from wearing turbans. *Id.*, ¶ 8.

On December 14, 2004, the BOP issued Program Statement 5360.09 which sets forth inmate regulations on the type and use of religious headwear and religious garments. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defts.' Mot."), Exhibit ("Ex.") 1. Pursuant to this policy, Muslim inmates are permitted to wear a Kufi, which is a black or white crochet cap. *Id.*, p. 12. Inmates who are members of the Sikh religion are permitted to wear a turban. *Id.* The Program Statement also prescribes the wearing of ceremonial clothing and provides that only "Islamic inmates may not hem or wear their pants above the ankle." *Id.*, p. 12.[2] Plaintiff challenged these policies through the administrative remedy process, arguing that the restrictions on headwear and clothing substantially burdened the exercise of his religious faith. Amend. Compl. ¶¶ 9, 12, 14.

**Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). Material facts are those that "might affect the outcome of the suit under the

---

[2] The BOP states that this provision contains a typographical error and that an amendment to the Program Statement, which is in the process of being implemented, will instead provide that "Inmates may not hem their pants above the ankle." Defts.' Mot., Declaration of Susan Van Baalen ("Van Baalen Decl."), ¶ 14 & Ex. 3.

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

**Discussion**

A. First Amendment/RFRA Claims

Plaintiff contends that the BOP's regulations on religious headwear and clothing violate the free exercise clause of the First Amendment and RFRA. It is well-established that prisoners do not forfeit all constitutional protections by reason of their confinement. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Even though he is an inmate, therefore, Plaintiff retains the right under the First Amendment to the free exercise of his religion. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Levitan v. Ashcroft*, 281 F.3d 1313, 1317 (D.C. Cir. 2002). However, incarceration

"brings about the necessary withdrawal or limitation of many privileges and rights" due to the special considerations in a prison context. *Price v. Johnston*, 334 U.S. 266, 285 (1948).

An inmate's First Amendment right to the free exercise of religion is subject to reasonable restrictions and limitations imposed by prison officials. *Bell*, 441 U.S. at 549-50. A prison regulation that impinges on an inmate's constitutional rights is valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether such a regulation meets this test, the Court should consider four factors: (1) whether there is a valid rational connection between the regulation and the interest proffered to justify it; (2) whether prisoners retain an alternative means of exercising their constitutional rights; (3) an assessment of the impact of accommodating a prisoner's rights on guards, other prison inmates, and prison resources; and (4) the absence of reasonable alternatives. *Id.* at 90; *see also Levitan*, 281 F.3d at 1318.

In addition to his constitutional claim, plaintiff alleges that the BOP's regulations violate RFRA.[3] That statute was enacted to overturn *Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990), a decision which held that the First Amendment permits governments to apply neutral generally applicable laws to religious practice without a showing of a compelling state interest. *Cutter*, 125 S.Ct. at 2118; *Caldwell v. Caesar*, 150 Supp. 2d 50, 55 (D.D.C. 2001). RFRA provides that a government "shall not substantially burden a person's

---

[3] In *City of Boerne v. Flores*, 521 U.S. 507, 523-36 (1997), the Supreme Court held that RFRA was unconstitutional as applied to the states. A number of Courts of Appeals have held that RFRA does apply to the federal government. *See Cutter v. Wilkinson*, 125 S.Ct. 2113, 2118 n. 2 (2005)(citing cases). The Courts of this Circuit are in accord. *See, e.g.*, *Henderson v. Kennedy*, 265 F.3d 1072, 1073 (D.C. Cir. 2001), *cert. denied*, 535 U.S. 986 (2002) ; *Gartrell v. Ashcroft*, 191 F.Supp. 2d 23, 37 (D.D.C. 2002). The Supreme Court has yet to decide the issue. *See Cutter*, 125 S.Ct. at 2118 n. 2.

exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates that it "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb.  RFRA requires a more stringent standard than required by the Supreme Court's free exercise clause jurisprudence.  *Hankins v. Lyght*, 438 F.3d 163, 179 (2d Cir. 2006); *Jackson v. District of Columbia*, 89 F.Supp 2d 48, 69 (D.D.C. 2000).  Accordingly, the Court will evaluate Plaintiff's free exercise claim under the provisions of RFRA.

RFRA requires the Plaintiff to demonstrate that a government action substantially burdens his sincerely held religious beliefs.  *See* 42 U.S.C. § 2000bb-1(a) and §2000b-2(3).  Defendants do not challenge Plaintiff's claims that his religious practices have been substantially burdened by the BOP's Program Statement on religious headwear and clothing restrictions.  *See* Defts.' Mot., p. 9.  Thus, the burden is on the Defendants to prove that the policy is the least restrictive means of achieving a compelling interest.  *See* 42 U.S.C. § 2000bb-1(b)(2).

In applying the compelling interest test, "context matters." *Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal*, 126 S.Ct. 1211, 1221 (2006), *quoting Grutter v. Bollinger*, 539 U.S. 306, 327 (2003).  The BOP has the statutory duty of providing for the safety of inmates. *See* 18 U.S.C. § 4042(a).  Prison officials have broad administrative and discretionary authority over the institutions they manage.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983).  Courts are to afford deference and flexibility to officials trying to manage the safety of the prison environment. *Sandin v. Conner*, 515 U.S. 472, 482 (1995). "[P]rison security is a compelling state interest" and "deference is due to institutional officials' expertise in this area." *Cutter*, 125 S.Ct. at 2124 n. 13.

The BOP asserts that restrictions on an inmate's clothing alterations and the wearing of

turbans serve the penological interests of maintaining security of the prison, rehabilitating inmates, and deterring prison gang activity. Defts.' Mot., Declaration of Michael Sepanek ("Sepanek Decl."), ¶ 4. The alteration of clothing may be used as an identifier of affiliation with a certain gang or group and used to promote violence amongst the inmates. *Id.*, ¶ 6. The BOP asserts that its policy of mandating uniformity in dress preserves the security of an institution because an individual inmate will not "stand out" as a member of a specific group. *Id.* The uniform policy also serves to create a sense of equality among all inmates. *Id.*, ¶ 7.

The BOP contends that allowing Muslim inmates to wear a turban would also pose a security risk to a correctional institution. *Id.*, ¶ 9. The agency offers several reasons for this conclusion: (1) use of a turban is associated with the Taliban; (2) a turban would enable an inmate to conceal weapons and drugs; (3) there are more than 10,000 Muslims in federal prison facilities; and (4) to maintain security, searches of turbans would have to be made on a regular basis, which would affect the other duties of correctional staff and, thus, compromise the security of an institution. *Id.* Given this proffer and the fact that the BOP is entitled to deference on decisions regarding prison safety, it has shown a compelling interest in support of its policy.

The BOP has also met its burden of demonstrating that its policy is the least restrictive means of advancing its compelling interest. Under the BOP's Program Statement, Muslim inmates are not forbidden to wear all headwear associated with their religious beliefs. Muslims are permitted to wear a Kufi, which is a thin, sometimes transparent, tight-fitting cap. *Id.*, ¶ 10. It is difficult for an inmate to conceal contraband within a Kufi and, in any event, searching them is a quick and easy process for correctional staff. *Id.* Furthermore, prior to instituting its turban policy, the BOP consulted with a variety of Islamic scholars. Van Baalen Decl., ¶ 9. According

6

to Ms. Van Baalen, BOP's Chief of Chaplain Services, Islamic scholars uniformly stated to the BOP that a Kufi is an appropriate head covering for Muslim inmates. *Id.*[4] The BOP policy allows Muslims inmates to cover their heads in accordance with their religious customs. *Id.*

The Court finds that the Defendants have demonstrated a compelling interest for its policy on Muslim religious headwear and clothing and have adopted the least restrictive means of furthering that interest. Therefore, Defendants have not violated RFRA or the Plaintiff's First Amendment rights.

B. Equal Protection Claim

Plaintiff contends that the Program Statement regarding religious beliefs and practices violates his right to equal protection under the Fifth Amendment because the BOP allows non-Muslim inmates to wear turbans, but prohibits Muslim inmates from doing so. The initial inquiry in evaluating an equal protection claim is whether a person is similarly situated to those persons who allegedly received favorable treatment. *Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1196 (1997). The equal protection clause requires that "all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In addition to showing the unequal treatment, Plaintiff must "show that the requisite relationship between the disparate treatment and the government interest does not exist." *Farmer v. Hawk-Sawyer*, 69 F.Supp.2d 120, 125 (D.D.C. 1999). To establish an equal protection claim,

---

[4] In other cases, Muslim inmates bringing a RFRA lawsuit have claimed, contrary to Plaintiff's assertion here, that wearing a Kufi is required by their religion. *See Ali v. Szabo*, 81 F.Supp. 2d 447, 468 (S.D.N.Y. 2000); *Abdul-Akbar v. Dep't of Corrections*, 910 F.Supp. 986, 1007 (D. Del. 1995), *aff'd* 111 F.3d 125 (3rd Cir.), *cert. denied*, 522 U.S. 852 (1997); *Muslim v. Frame*, 897 F.Supp. 215, 217 (E.D. Pa. 1995).

Plaintiff is required to demonstrate discriminatory intent or purpose by the BOP. *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976); *Fernandors v. District of Columbia*, 382 F.Supp. 2d 63, 69 (D.D.C. 2005).

The equal protection clause mandates that prison officials cannot discriminate among different religions. *Cruz v. Beto*, 405 U.S. 319, 321-22 (1972)(per curiam). However, in evaluating a prison regulation that allegedly impinges on a constitutional right , the Court should afford deference to prison officials and judge the regulation under a "reasonableness" test. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). In the prison context, a government regulation is judged on a less stringent test than that ordinarily applied to alleged infringements of fundamental constitutional rights. *Id.* A prison regulation that infringes on an inmate's constitutional rights is valid if it "reasonably related" to legitimate penological interests. *Turner*, 482 U.S. at 128; *see also Caldwell*, 150 F.Supp. at 58-59.[5]

The factors relevant to a determination of the reasonableness of a prison regulation that impacts an inmate's religious practices are (1) whether the regulation has a logical connection to the legitimate government interest used to justify it; (2) whether the inmate has alternate means of exercising that right; and (3) the impact the accommodation of Plaintiff's asserted right would have on other inmates, prison personnel, and the allocation of prison resources generally. *O'Lone*, 482 U.S. at 350-52. The BOP's religious headwear policy permits Sikh inmates to wear a turban. Van Baalen Decl., ¶ 10. In defense of this disparate treatment between Muslims and Sikhs, the BOP offers a number of rationales. First, the Sikh religion, unlike the Islamic faith,

---

[5] The Supreme Court has recognized one exception to this general rule. A race-based prison policy is subject to strict scrutiny, i.e., the policy must be narrowly tailored to serve a compelling state interest. *Johnson v. California*, 543 U.S. 499, 513-14 (2005).

does not allow any substitute for a turban. *Id.* Second, a central tenet of the Sikh religion is that the turban is an extension of the body and removal of the turban would amount to a form of strip search. *Id.* at ¶ 13. The BOP also states that there are only 54 Sikh inmates and over 10,000 Muslim inmates in federal correctional institutions. *Id.* at ¶ 11. To maintain security, for example, by preventing the introduction of contraband into a facility, prison staff would be required to search all turbans. *Id.* at 12. The time required to search a Kufi worn by a Muslim would be much less than if the inmate wore a turban. *Id.* at 13. Since there are a small number of Sikhs in the custody of the BOP, the time required to search them is minimal compared to the prison resources that would be needed to search all Muslims wearing turbans. *Id.*

The BOP's prohibition on the wearing of turbans by Muslims and the limitation on trouser length is based on the need for security and orderly running of the institution. The regulation provides alternative religious head wear for Muslim inmates, one approved of by leaders of the Muslim faith consulted by the BOP. Finally, in addition to the security concerns, the BOP adopted this policy because the searches of all Muslim inmates wearing turbans would be time-consuming and affect the allocation of prison resources. For these reasons, the Court finds that the BOP's policy has a rational basis, serves the legitimate interests of the BOP, and does not violate Plaintiff's right to equal protection.

## Conclusion

Based on the foregoing, Defendants' motion for summary judgment will be granted and

Plaintiff's cross-motion will be denied.[6]  An appropriate order accompanies this Memorandum Opinion.

/s/
GLADYS KESSLER
United States District Judge

DATE: May 10, 2006

---

[6] Plaintiff's motion for appointment of counsel will be denied because his filings have raised all the relevant legal issues.